UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| THOMAS HARDY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ROBERT E. CARTER, et al. )<br>)<br>Defendants. ) | No. 2:20-cv-00233-JRS-DLP |

**Order Granting Defendants' Motion for Summary Judgment
and Directing Entry of Final Judgment**

Plaintiff Thomas Hardy, an inmate at Wabash Valley Correctional Facility ("WVCF"), filed this civil rights action under 42 U.S.C. § 1983 alleging that the defendants violated his constitutional rights. Specifically, he alleges that the conditions of his confinement in the administrative segregation unit at WVCF violated his rights under the Eighth Amendment and the defendants' failure to provide meaningful review of his placement in administrative segregation violated the Fourteenth Amendment due process clause.

The defendants seek summary judgment on the basis that this action should be dismissed because Mr. Hardy did not exhaust his administrative remedies. Mr. Hardy has responded in opposition to the motion for summary judgment, and the defendants have replied. For the reasons explained below, the motion for summary judgment is **granted**.

**I. Summary Judgment Standard**

A motion for summary judgment asks the Court to find that there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions,

1

documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B).

The moving party is entitled to summary judgment if no reasonable factfinder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). The Court need only consider the cited materials and need not "scour the record" for evidence that is potentially relevant to the summary judgment motion. *Grant v. Trustees of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (quotation marks omitted); *see also* Fed. R. Civ. P. 56(c)(3).

## II. Statement of Facts

On December 5, 2014, Mr. Hardy was placed in administrative segregation at WVCF after being found guilty of a disciplinary infraction. Dkt. 25-5 at ¶¶ 10-11; *see also* dkt. 25-6. He remained in administrative segregation until his return to general population on May 2, 2018. Dkt. 25-5 at ¶ 10. While in administrative segregation, Mr. Hardy received periodic reviews of his housing status. *See* dkt. 25-8.

At all times during Mr. Hardy's placement in administrative segregation, the Indiana Department of Correction ("IDOC") maintained an Offender Grievance Process ("the Grievance Process") and a Classification Process. Dkt. 25-1 at ¶¶ 10-35; dkt. 25-5 at ¶¶ 14-17. The Grievance Process applied to "concerns relating to conditions of care or supervision within the IDOC." Dkt. 25-2 at 4; dkt. 25-3 at 4. The Classification Process was intended to assign inmates to the least restrictive housing level "consistent with the goal to protect the community and ensure the safety of staff and other offenders." Dkt. 25-9 at 1; dkt. 25-10 at 1; dkt. 25-11 at 1. Inmates receive

information about both the Grievance Process and the Classification Process during admission and orientation, and copies of both processes are available in the law library at WVCF. *See* dkt. 25-1 at ¶¶ 20-21, 33-35; dkt. 25-5 at ¶ 18.

### A. Grievance Process

The Grievance Process applicable at the time of Mr. Hardy's incarceration in administrative segregation consisted of the following steps: (1) an informal attempt to resolve a problem or address a concern; (2) submission of a formal grievance identifying the problem or concern; and (3) submission of an appeal of the response to the formal grievance. Dkt. 25-1 at ¶¶ 12, 24-25; *see also* dkt. 25-2 at 13-23 and dkt. 25-8-13. Exhaustion requires inmates to properly complete the appropriate grievance forms and timely submit them to the correct people at each stage of the process, as outlined in the Grievance Process. Dkt. 25-1 at ¶¶ 16-18.

Although two versions of the Grievance Process applied during Mr. Hardy's time in administrative segregation, the requirements were the same. As relevant to the claims in this litigation, once an inmate filed a formal grievance the grievance specialist was required to "either return an unacceptable form or provide a receipt for an accepted form." Dkt. 25-2 at 16; *see also* dkt. 25-3 at 10-11 (although this version of the Grievance Process is organized differently, it still required a grievance specialist to screen a grievance within five business days of receipt and either accept or reject it). If an inmate did not receive notification of action taken with respect to his grievance within a certain number of days, the Grievance Process required the inmate to take action. Under the earlier version of the Grievance Process, if an inmate did not receive either a receipt for an accepted grievance or a rejected grievance from the grievance specialist within seven working days of submission, the Grievance Process required the inmate to "immediately notify the facility [grievance specialist]." Dkt. 25-2 at 16-17. Similarly, the revised version of the Grievance

Process required the inmate to either correct errors in a returned grievance or "appeal as though the grievance had been denied" if he received no response within 20 business days of the grievance specialist's investigation of the grievance. Dkt. 25-3 at 10-11.

Thomas Wellington is the grievance department supervisor and acting grievance specialist at WVCF. Dkt. 25-1 at ¶ 2. As such, he oversees the Grievance Process and has access to grievance records at WVCF. *Id.* at ¶ 3. Mr. Wellington reviewed the grievance records maintained at WVCF and located no informal grievances, accepted or rejected formal grievances, or any other grievance-related records pertaining to Mr. Hardy. *Id.* at ¶¶ 36-39.

Mr. Hardy states that the Grievance Process is a "sham." Dkt. 44 at ¶ 10.[1] He alleges that he submitted a grievance and then re-submitted a corrected grievance after his original grievance was rejected for procedural errors. *Id.* After he re-submitted his grievance, the grievance specialist "never responded" to it, or it "simply disappeared." *Id.* Mr. Hardy does not indicate when he submitted his grievance or what he discussed in his grievance. *See id.*

### B. Classification Process

The Classification Process applicable at the time of Mr. Hardy's incarceration in administrative segregation permitted inmates to administratively appeal classification decisions, including placement and continued placement in administrative segregation. Dkt. 25-5 at ¶ 14. An inmate could appeal a classification decision by submitting the required form "within ten (10) working days from the date that the [inmate] received the classification decision." *Id.*; *see also* dkt. 25-9 at 10-13; dkt. 25-10 at 10-13; dkt. 25-11 at 10-13. The inmate had to submit the appeal

---

[1] Mr. Hardy did not sign the original pleadings submitted in response to the motion for summary judgment. *See* dkts. 38, 39, 40. The Court afforded him an opportunity to submit signed pleadings, dkt. 43, and Mr. Hardy has done so, dkts. 44, 45, 46.

4

form and all other documentation to the warden or superintendent of the facility. Dkt. 25-9 at 10; dkt. 25-10 at 10; dkt. 25-11 at 10.

Matt Leohr is the supervisor of classification at WVCF and thus has access to classification records at WVCF. Dkt. 25-5 at ¶¶ 3-4. Although records indicate that Mr. Hardy requested documents to appeal a classification decision on one occasion in December 2016, Mr. Leohr found "no institutional record showing that [Mr.] Hardy ever appealed, or attempted to appeal, his classification designation." *Id.* at ¶¶ 20, 22-23; *see also* dkt. 25-12.

Contrary to the evidence submitted by the defendants with respect to the Classification Process, Mr. Hardy contends that he attempted to file a classification appeal. Dkt. 44 at ¶ 11. He alleges that he "appealed the sham review of his placement [in administrative segregation] to the supervisor of classification at WVCF and to the Director of Classification for [IDOC]." *Id.* at ¶ 11. He states that his "appeals were never acknowledged or simply disappeared." *Id.* He does not explain the grounds for his appeal, nor does he state when he submitted the appeal. *Id.*

### III. Discussion

The defendants argue that Mr. Hardy failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), before he filed this lawsuit. The PLRA requires that a prisoner exhaust his available administrative remedies before bringing a suit concerning prison conditions. 42 U.S.C. § 1997e(a); *see Porter v. Nussle,* 534 U.S. 516, 524–25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 532 (citation omitted). The requirement to exhaust provides "that no one is entitled to judicial relief for a supposed or threatened injury until the

5

prescribed administrative remedy has been exhausted." *Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006) (citation omitted).

Exhaustion of available administrative remedies "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Id.* at 90. Proper use of the facility's grievance system requires a prisoner "to file complaints and appeals in the place, and at the time [as] the prison's administrative rules require." *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002).; *see also Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

While a prisoner "must exhaust available remedies," he "need not exhaust unavailable ones." *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016). An administrative procedure is unavailable when 1) the process operates as a "simple dead end," 2) when it is so opaque that it is incapable of use, and 3) when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859–60. It is the defendants' burden to establish that the administrative process was available to Mr. Hardy. *See Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015) ("Because exhaustion is an affirmative defense, the defendant must establish that an administrative remedy was available and that [the plaintiff] failed to pursue it.").

**A. Mr. Hardy's Use of the Grievance Process**

The defendants have presented evidence that the Grievance Process was available to Mr. Hardy and that he knew how to use it. Specifically, they submitted evidence that inmates received instruction on the Grievance Process during orientation and that copies of the Grievance Process were available in the law library at WVCF. Dkt. 25-1 at ¶¶ 20, 34-35. Additionally, inmates could use the Grievance Process "at all times, including while in the infirmary and restricted housing units." *Id.* at ¶¶ 21, 33. Mr. Hardy does not dispute these assertions.

The defendants have also submitted evidence that Mr. Hardy did not properly exhaust the administrative remedies available to him by completing the Grievance Process. Mr. Hardy's grievance history, as maintained by WVCF and other facilities within IDOC, "indicates that [Mr. Hardy] has not filed any accepted formal grievances or appeals whatsoever." Dkt. 25-1 at ¶¶ 37-38. The defendants therefore assert that "[t]here is no evidence to support that [Mr.] Hardy ever complied, or attempted to comply, with IDOC's grievance policy in relation to his conditions of confinement claims." *Id.* at ¶ 39.

Mr. Hardy attempts to establish a factual dispute by asserting that he did submit a formal grievance, but the grievance specialist never responded to it or it "simply disappeared." Dkt. 44 at ¶ 10. Even if the Court accepts this factual assertion as true, it is not sufficient to defeat the defendants' motion for summary judgment. Both versions of the Grievance Process applicable during Mr. Hardy's incarceration in administrative segregation required an inmate to take action if he did not receive a response from the grievance specialist concerning a grievance. Under the latter version of the policy, Mr. Hardy was to inform the grievance specialist of any failure to take action with respect to a grievance. Dkt. 25-2 at 16-17. Under the more recent version, Mr. Hardy was to appeal the grievance as if it had been denied. Dkt. 25-3 at 11. Mr. Hardy has not presented any evidence that he took further action with respect to his grievance after the grievance specialist failed to act on it and, as explained above, the defendants have submitted evidence that Mr. Hardy made no attempts to comply with the Grievance Process.

Consequently, even construing the facts in favor of Mr. Hardy, the undisputed evidence shows that he failed to comply with the requirements of the Grievance Process. His Eighth Amendment conditions of confinement claims is therefore barred for failure to exhaust administrative remedies as required by the PLRA. *See Pozo v. McCaughtry,* 286 F.3d at 1025 ("To

exhaust administrative remedies, a person must follow the rules governing filing and prosecution of a claim."). The defendants are entitled to judgment as a matter of law on Mr. Hardy's Eighth Amendment conditions of confinement claim.

### B. Classification Process

The defendants assert that Mr. Hardy needed to exhaust the administrative remedies available to him through the Classification Process to comply with the PLRA's exhaustion requirement for his Fourteenth Amendment due process claim. *See* dkt. 26 at 10. Mr. Hardy does not dispute that the Classification Process applies to the exhaustion component of this claim.[2]

The defendants have submitted evidence that the Classification Process was available to Mr. Hardy and he failed to use it. They state that all inmates receive instruction about the Classification Process during orientation and copies of the Classification Process are available in the law libraries of adult correctional facilities within IDOC. Dkt. 25-5 at ¶ 18. Inmates can use the Classification Process at any time, "including while in the infirmary and restrictive housing units." *Id.* at ¶ 19. The defendants found "no institutional record showing that [Mr.] Hardy ever appealed, or attempted to appeal, his classification designation." *Id.* at ¶¶ 20, 23.

While Mr. Hardy does not dispute that the Classification Process was available to him, he does submit evidence that his attempts to use the Classification Process were thwarted by prison officials. He states that he appealed his classification to the supervisor of classification at WVCF and the IDOC director of classification, but his appeals were not acknowledged or "simply disappeared." Dkt. 44 at ¶ 11.

---

[2] Even if Mr. Hardy did assert that the Grievance Process applied to his Fourteenth Amendment due process claim, as explained in Section III.A, the defendants have presented undisputed evidence that Mr. Hardy failed to comply with the requirements of the Grievance Process.

Even if the Court accepts Mr. Hardy's allegations as true, they are insufficient to establish a dispute of material fact as to whether Mr. Hardy complied with the Classification Process. All of the versions of the Classification Process applicable during Mr. Hardy's time in administrative segregation required an inmate to submit an appeal of a classification decision to the warden or superintendent of the facility. Dkt. 25-9 at 10; dkt. 25-10 at 10; dkt. 25-11 at 10. Mr. Hardy states that he submitted his appeal to the supervisor of classification at WVCF and the IDOC director of classification as opposed to the warden or superintendent as required. Dkt. 44 at ¶ 11. Thus, Mr. Hardy's own factual assertion establishes that he did not comply with the Classification Process.

Because Mr. Hardy did not comply with the requirements of the Classification Process, he has not exhausted the administrative remedies available to him with respect to his Fourteenth Amendment due process claim. The PLRA therefore prohibits him from filing suit. 42 U.S.C. § 1997e(a); *see Porter,* 534 U.S. at 524–25. The defendants are entitled to judgment as a matter of law on Mr. Hardy's Fourteenth Amendment due process claim.

### IV. Conclusion

For the reasons set forth above, the defendants' motion for summary judgment, dkt. [25], is **granted**. This action is **dismissed without prejudice**. Final judgment shall now issue.

**IT IS SO ORDERED.**

Date: 1/22/2021

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

THOMAS HARDY
973341
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

Thomas Joseph Flynn
INDIANA ATTORNEY GENERAL
tom.flynn@atg.in.gov